**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

KEYSOFT, INC.,

         Plaintiff,

v.

SAGE GROUP PLC,

         Defendant.

**C.A. No. 1:26-cv-01322**

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Keysoft, Inc. ("Plaintiff" or "Keysoft"), by and through its undersigned counsel, file this Complaint for Patent Infringement against Sage Group, plc ("Defendant" or "Sage") and alleges as follows:

## NATURE OF THE ACTION

1. This action seeks legal and equitable relief based on Sage's unlawful infringement of U.S. Patent No. 8,271,315 ("the '315 Patent" or "Patent-in-Suit"), which generally relates to Personal Information Utilization Systems and Personal Information Utilization Program for Commodity Based Identification to improve the quality of service for customers by sharing and utilizing personal information on customers amongst a variety of industries.

## PARTIES

2. Plaintiff Keysoft is a Japanese corporation with a place of business located at 116-1, Kouyama, Matsuda-Machi, Ashigarakami-Gun, Kanagawa, Japan 258-0002.

3. Upon information and belief, Defendant Sage is a United Kingdom corporation with a place of business located at C23 - 5 & 6 Cobalt Park Way Cobalt Park, Newcastle Upon

1

Tyne, United Kingdom, NE28 9EJ and its primary Texas location at 211 E 7th Street Ste. 800, Austin, Texas.

<u>**JURISDICTION AND VENUE**</u>

4.    This is a civil action that arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, but not limited to, 35 U.S.C. §§ 271 and 281. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

5.    The Court has both general and specific personal jurisdiction over Sage because its location in this judicial district is registered to do business in the State, and continuously and systematically conducts business in the State of Texas and in this judicial district. Exercising personal jurisdiction over Sage in this patent infringement action comports with due process and traditional notions of fair play and substantial justice.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b), in light of Sage's nationality and its of Sage's location here and upon information and belief, Sage has committed acts of infringement in this judicial district.

<u>**BACKGROUND**</u>

<u>**Mr. Yoshimitsu Kagiwada and the Patent-in-Suit**</u>

7.    The named inventor of the patent-in-suit, the '315 patent, and a CEO of Keysoft, Mr. Yoshimitsu Kagiwada, graduated from Keio University, and has been an innovator in the field of big data marketing for over two decades.

8.    Mr. Kagiwada founded Keysoft in November of 1992 in response to his independent research and analysis revealing linkages between apparently unrelated events and purchases.

9.    At that time, Mr. Kagiwada was serving as a director of a bedding manufacturer and conducted independent research looking into when and why customers typically purchase bedding.  He found that (i) 30% of purchases occurred during marriage, (ii) 30% occurred

during home construction, and (iii) 25% during relocation. In fact, when Mr. Kagiwada compared the effectiveness of distributing bedding flyers to newly constructed homes versus other existing residences, the former showed significantly better results.

10. Mr. Kagiwada, thus, discovered that by leveraging data related to events such as new home construction, relocation, and marriage, sales of bedding, furniture, and home appliances could be increased by targeted advertising based upon event and occurrences unrelated to bedding sales in the first instance.

11. Based on this discovery, the patent application that matured into the '315 Patent was filed in May 2001 and was granted in the U.S. and Japan.

12. Mr. Kagiwada, additionally, filed a patent application for crowdfunding in February 2001, and which was granted in Japan in 2011.

13. Mr. Kagiwada is a named inventor of 3 issued U.S. patents, including those in the field of big data marketing as well as over 15 pending and/or published applications in the U.S.,[1] and holds approximately 30 other patents worldwide.

**Accused Method**

14. Defendant Sage develops, markets and provides customer relationship management (CRM), enterprise resource planning and marketing-related software solutions, including Sage CRM and related platforms, which enable businesses to store, process and utilize customer information in connection with the provision of goods and services.[2]

---

[1]    Information regarding Mr. Kagiwada's U.S. patents and applications may be found at https://patents.justia.com/inventor/yoshimitsu-kagiwada (last accessed April 12, 2024).

[2]    Information regarding Sage was obtained from https://www.sage.com/en-us/products/sage-crm/ (last accessed April 7, 2026).

15.　According to publicly available information, Sage CRM provides a centralized platform for storing customer data, including personal information, transaction histories, and behavioral data associated with customers. [3]

16.　Upon information and belief, Sage CRM includes communication functionality that enables transmission of data and communications between user terminals and Sage's systems, including delivery of marketing communications and campaign outputs.[4]

17.　Upon information and belief, Sage CRM includes one or more processors configured to control operation of the system, including storage, analysis, and transmission of customer-related data.

18.　Sage CRM stores personal information of a plurality of individuals associated with business customers, including information relating to prior transactions, interactions, and provision of products or services to such individuals.[5]

19.　Upon information and belief, Sage CRM receives additional information relating to products, services, or campaigns defined by users through user terminals, including information describing attributes of offerings and criteria for identifying target customers.[6]

---

[3]　See, e.g., https://www.sage.com/en-us/products/sage-crm/ (describing management of customer information and relationships) (last accessed April 7, 2026).

[4]　See, e.g., https://www.sage.com/en-us/products/sage-crm/ (describing customer engagement and communication tools) (last accessed April 7, 2026).

[5]　See, e.g., https://www.sage.com/en-us/products/sage-crm/ (describing tracking of customer interactions and history) (last accessed April 7, 2026).

[6]　See, e.g., https://www.randgroup.com/sage/sage-crm/ (last accessed April 7, 2026) (describing customer records sync automatically … updates to … customer information appear).

20.    Sage CRM analyzes such received information against stored customer information, including by segmenting customer data and identifying relationships or similarities between customer attributes, behaviors, and prior transactions. [7]

21.    Based on such analysis, Sage CRM identifies specific individuals or groups of individuals associated with stored customer data whose attributes at least partially correspond to the received information.[8]

22.    Sage CRM retrieves at least a portion of the stored personal information associated with such identified individuals for use in downstream processing, including campaign execution and customer targeting.

23.    Sage CRM transmits communications, including marketing messages and related information, to user terminals or customer devices associated with the identified individuals based on the analyzed and retrieved customer information.[9]

24.    Upon information and belief, Sage has offered and provided the foregoing functionality to customers throughout the United States and has derived substantial revenue therefrom.

**Patent-In-Suit**

25.    On September 18, 2012, U.S. Patent No. 8,271,315 ("the '315 Patent"), entitled "Personal Information Utilization Systems And Personal Information Utilization Program For

---

[7]    See, e.g., https://www.azamba.com/sage-crm/marketing/ (describing within Sage CRM, you can segment customer and prospect lists and send targeted marketing communications to the right people) (last accessed April 7, 2026).

[8]    See, e.g., https://www.azamba.com/sage-crm/marketing/ (describing Sage CRM identifies customers meeting specified criteria by using stored customer data and segment definitions) (last accessed April 7, 2026).

[9]    See, e.g., https://www.azamba.com/sage-crm/marketing/ (describing Sage CRM enables users to transmit marketing communications to identified audiences based on the analyzed customer data) (last accessed April 7, 2026); See, e.g., https://www.sage.com/en-us/products/sage-crm/ (describing customer engagement capabilities) (last accessed April 7, 2026).

5

Commodity Based Identification," was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") to Mr. Yoshimitsu Kagiwada. A true and correct copy of the '315 Patent is attached hereto as Exhibit 1.

26.     The '315 Patent has been separately enforced in the U.S. District Court for the District of Delaware against Amazon (Civil No. 24-256-GBW) and Salesforce (Civil No. 24-257-GBW), and Keysoft settled the infringement claims under confidential terms.

27.     On March 19, 2025, the USPTO found a new Substantial New Question of Patentability ("SNQ") regarding, inter alia, the limitations of Claim 1.

28.     On September 8, 2025, Keysoft submitted a Patent Owner's Statement challenging the USPTO's finding of an SNQ.

29.     On December 15. 2025, the USPTO issued U.S. Reexamination Certification 8,271,315.

30.     Keysoft is the assignee of the '315 Patent and has all substantial rights to sue for infringement and collect damages for past infringement.

31.     The '315 Patent claims priority to PCT No. PCT/JP02/11502 filed on November 5, 2002, and the '315 Patent published as U.S Patent Application Publication U.S. 2006/0155646 on July 13, 2006.

32.     Claim 1 of the '315 Patent recites:

| 1. | A personal information utilization system comprising: |
|---|---|
| | a personal information storage means; |
| | a communication means; and |
| | a processor configured for controlling operation of the personal information storage means and the communication means, said personal information storage means storing personal information of a plurality of information disclosing persons and storing first commodity provision information |

| | |
|---|---|
| | pertaining to a first commodity provided to at least one of the plurality of information disclosing persons by a first commodity provider, and the processor further configured for: |
| a) | receiving second commodity provision information from a second commodity provider that is different than the first commodity provider, the second commodity provision information received from an information search side terminal via said communication means, the second commodity provision information including at least one of an attribute of the first commodity or information pertinent to providing the first commodity; |
| b) | checking said received second commodity provision information against the first commodity provision information; |
| c) | identifying, as a result of said checking, at least one specific information disclosing person from the plurality of information disclosing persons, the at least one specifically identified information disclosing person associated with said first commodity provision information, said identifying by using the second commodity provision information as a key such that the second commodity provision information at least partially coincides with the first commodity provision information; |
| d ) | reading out at least a portion of the personal information of said at least one specifically identified information disclosing person from said personal information storage means; and |
| e) | transmitting said read out at least a portion of the personal information to said information search side terminal via the communication means. |

33. Claim 1 of the Asserted Patent is directed to patent-eligible subject matter under 35 U.S.C. §101.

34. Claim 1 recites a computer-implemented personal information utilization system comprising a personal information storage means, a communication means, and a processor configured to control operation of those components.

35. The claimed system stores personal information of a plurality of information-disclosing persons together with commodity provision information associated with commodities provided by specific commodity providers.

36. The processor is further configured to receive second commodity provision information from a second commodity provider that is different from the first commodity provider, wherein the second commodity provision information is received from an information search side terminal via the communication means.

37. The claimed processor is configured to check the received second commodity provision information against stored first commodity provision information maintained in the personal information storage means.

38. As a result of this checking, the processor identifies at least one specific information-disclosing person associated with the stored first commodity provision information by using the second commodity provision information as a key that at least partially coincides with the stored first commodity provision information.

39. The processor then reads out at least a portion of the personal information of the specifically identified information-disclosing person from the personal information storage means.

40. The system transmits the read-out portion of the personal information to the information search side terminal via the communication means.

41. Claim 1 is not directed to an abstract idea, such as a fundamental economic

practice, a method of organizing human activity, or a mental process.

42.    Instead, Claim 1 is directed to a specific technological system and a defined sequence of computer-implemented operations that enable controlled identification, retrieval, and transmission of personal information based on commodity-related attributes received from an external terminal.

43.    The claimed operations, including automated checking of commodity provision information, key-based identification of specific individuals across stored datasets, selective read-out of personal information, and network transmission to an external terminal, cannot be performed by the human mind and are inherently computer-based.

44.    Claim 1 improves the functioning of personal information systems by enabling automated, attribute-based retrieval of personal information across multiple commodity providers without requiring manual searching, direct database access, or unrestricted disclosure of personal data.

45.    Accordingly, Claim 1 is directed to a concrete technological solution to a computer-centric data utilization problem, rather than an abstract idea.

46.    Even if Claim 1 were deemed to implicate an abstract idea, which it does not, the claim nevertheless recites an inventive concept sufficient to transform any alleged abstract idea into patent-eligible subject matter.

47.    Claim 1 does not merely implement a known practice on a generic computer, but instead recites a non-conventional arrangement of system components and operations, including the use of commodity provision information as a key for identifying specific individuals and controlling access to personal information.

48.    The claimed system provides controlled, partial disclosure of personal information to external commodity providers without granting direct access to the underlying personal information storage, thereby improving security and data governance.

9

49.    The inventive concept of Claim 1 arises from the ordered combination of its elements, which collectively enable functionality not present in conventional personal information systems.

50.    Claim 1 therefore recites significantly more than the mere automation of an abstract idea.

51.    For at least these reasons, Claim 1 is directed to patent-eligible subject matter under 35 U.S.C. §101.

<u>**COUNT I – PATENT INFRINGEMENT**</u>

52.    Plaintiff Keysoft incorporates by reference and realleges Paragraphs 1-51 of its Complaint, and further incorporates by reference the Preliminary Infringement Claim Chart U.S. Patent 8,271,315; Claim 1 (attached as Exhibit 2), as though fully set forth herein.

53.    The allegations provided below are exemplary and without prejudice to Keysoft's infringement contentions. In providing these allegations, Keysoft does not convey or imply any particular claim constructions or the precise scope of the claims. Keysoft's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

54.    The '315 Patent is presumed valid pursuant to 35 U.S.C. § 282.

55.    Upon information and belief, all of the infringing activities (i) are controlled by Sage or an entity within Sage's control and located within the United States and (ii) occur within the United States.

56.    Sage is not licensed or authorized to make, use, sell, offer to sell, or import any product or service that is covered by the claims of the '315 Patent.

57.    Upon information and belief, Sage has directly infringed and will continue to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '315 Patent in violation of 35 U.S.C. § 271(a), including but not limited to Claim 1, every time

Sage makes, uses, offers to sell, or sells Sage CRM.  See, e.g., Preliminary Infringement Claim Chart U.S. Patent 8,271,315; Claim 1 (attached as Exhibit 2).

58.    Upon information and belief, Sage is actively inducing individual and companies selling products on Sage to directly infringe one or more claims of the '315 Patent and/or are contributing to others' infringement of one or more claims or the '315 Patent.

59.    Upon information and belief, Sage's ongoing infringement of the '315 Patent is and will be willful, deliberate, and intentional.

60.    Sage's infringing activities are damaging Plaintiff Keysoft in an amount to be determined at trial. Additionally, the willful and deliberate nature of Sage's infringing activities entitles Plaintiff to recover trebled actual damages and to recover their attorneys' fees and costs incurred in this action.

## JURY DEMAND

61.    Plaintiff demands a trial by jury on all issues presented in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to enter judgment against Sage, Sage's subsidiaries, affiliates, agents, servants, employees, and all persons in active concert or participation with Sage, and grant the following relief:

(A)    A finding that Sage has directly and indirectly infringed one or more claims of the '315 Patent;

(B)    An award of damages adequate to compensate Plaintiff for Sage's infringement of the '315 Patent under 35 U.S.C. § 284;

(C)    A determination that Sage's infringement of the '315 Patent has been willful and deliberate;

11

(D)     A determination that this Action is "exceptional" under 35 U.S.C. § 285, thereby entitling Keysoft to an award of its reasonable attorneys' fees and costs incurred in prosecuting this Action;

(E)     An award of enhanced damages under 35 U.S.C. § 284 of treble damages based on the willful and deliberate nature of Sage's infringement;

(F)     An award of pre-judgment and post-judgment interest on all damages computed;

(G)     An award of court costs and attorneys' fees as allowed by applicable law; and

(H)     Such other relief as this Court deems fair, just, and appropriate.

Dated: May 18, 2026                              Respectfully submitted,

                                                 By: *Michael C. Smith*
                                                     Michael C. Smith
                                                     Texas Bar No. 18650410
                                                     michael.smith@solidcounsel.com
                                                     Scheef & Stone, LLP
                                                     113 E. Austin Street
                                                     Marshall, TX 75670
                                                     (903) 938-8900

                                                     P. Branko Pejic (pro hac vice forthcoming)
                                                     GREENBLUM & BERNSTEIN, P.L.C.
                                                     1950 Roland Clarke Place
                                                     Reston, Virginia 20191
                                                     (703) 716-1191
                                                     bpejic@gbpatent.com

                                                     *Counsel for Plaintiff Keysoft, Inc.*